## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

NICOLE KOLARIK,                          )
                                         )
                    Plaintiff,           )      **CIVIL ACTION**
                                         )
v.                                       )      No.  04-1388-MLB
                                         )
ALTERRA HEALTHCARE CORPORATION,          )
                                         )
                    Defendant.           )
_____  )

### MEMORANDUM AND ORDER

Plaintiff, Nicole Kolarik, filed suit against defendant alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), and the Family Medical Leave Act (FMLA). (See Doc. 1.)  This matter comes before the court on defendant Alterra Healthcare Corporation's (Alterra) motion for judgment on the pleadings. (See Doc. 29.)  As set forth below, defendant's motion is DENIED in part and GRANTED in part.

### I.    FACTS

Kolarik is a licensed practical nurse (LPN) previously employed by Alterra at an assisted living facility in Hays, Kansas. (See Docs. 29 and 34.)  She began working for Alterra in April, 2003. (See Doc. 1 ¶ 6.)  In late 2003, Kolarik informed Alterra that she was pregnant. (See Doc. 29 at 2.)  Kolarik alleges that because of her pregnancy, Alterra terminated her employment in February, 2004. (See Doc. 1 ¶ 8.)  She filed a charge of discrimination to the Equal Employment Opportunity Commission (EEOC) on or about July 3, 2004 and initiated the present action on December 13, 2004. (See Doc. 29 and 34.)  Additionally,

plaintiff alleges under the Family Medical Leave Act, that she was terminated due to her pregnancy.  (See Docs. 1 and 34.)

The issues presented are (1) whether plaintiff's Title VII claim should be dismissed because plaintiff failed to file a state discrimination charge with the Kansas Human Rights Commission (KHRC), and (2) does plaintiff have a valid FMLA claim?

**II.  STANDARD OF REVIEW FOR A MOTION FOR JUDGMENT ON THE PLEADINGS**

A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).  Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1159 (10th Cir. 2000).  A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)(quoting Conley v. Gibson, 355 U.S. 41, 45-6 (1957)).  All well-pleaded facts are accepted as true and viewed in favor of the plaintiff.  See Sutton v. Utah State School for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  In determining a Rule 12(b)(6) motion, the court "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted."  Id.

**III.     ANALYSIS**

### Count I: Title VII Claim

Title VII requires that in a deferral state, such as Kansas, prior to filing a discrimination charge with the EEOC, the aggrieved party must exhaust all administrative remedies and give

the state a 60-day deferral period to complete its investigation of the charge.  See 42 U.S.C. § 2000e-5(c); Wilson v. St. Louis-San Fransisco Ry Co., 673 F.2d 1152, 1154 (10th Cir. 1982); Morris v. State of Kan. Dep't of Revenue, 849 F.Supp. 1421, 1427 (D. Kan. 1994).

Defendant argues that in order for a discrimination charge to properly commence in Kansas, the aggrieved party must file one complaint with the EEOC and a separate state charge with the KHRC. (See Doc. 29 at 4-5.)  Defendant relies on the Kansas Court of Appeals ruling in Hughs v. Valley State Bank, which states that if an aggrieved party initially files a discrimination complaint with the EEOC, it is insufficient, under Kansas law, to file a state charge by merely sending the EEOC charge to the KHRC.  See 26 Kan. App. 2d. 631, 636-42, 994 P.2d 1079, 1083-87 (1999).  Defendant argues that under Hughs, because Kolarik never directly filed a complaint with the KHRC, no state law proceedings commenced, therefore, plaintiff's EEOC charge was never viable.  (See Doc. 29 at 6.)

The parties acknowledge that both Chief Judge Lungstrum and Judge Belot have previously rejected defendant's Title VII position.[1]  Both courts rejected Hughs v. Valley State Bank as

---

[1]Judge Lungstrum first addressed the issue of whether a plaintiff's Title VII claim must be filed directly with the KHRC in Novotny v. Coffey County Hospital.  See No. 03-2566 (D. Kan. May 10, 2004).  Judge Belot addressed the issue in Sumler v. The Boeing Co.  See No. 02-1383, at 19 (D. Kan. July 20, 2004).  Novotny was not appealed.  Sumler filed an appeal on August 17, 2004 and raised two issues: "(1) whether the district court erred in finding that no genuine issue of material fact existed on Sumler's discrimination claim; and (2) whether Sumler created a genuine issue of material fact that Boeing unlawfully retaliated against

-3-

authoritative for Title VII purposes.  See Novotny, No. 03-2566, at 5 (stating that "[n]otably absent from the court's reasoning, is any mention of the relevant statutory language in Title VII. Thus, [Hughs] is not persuasive nor informative on the issue of exhaustion of administrative remedies under Title VII."); Sumler, No. 02-1383, at 19 (noting that "[w]hile Hughs may be controlling for purposes of Kansas law, and particularly for actions brought under the Kansas Act Against Discrimination, it is not authoritative for purposes of Title VII.").

Plaintiff submits that this court should follow Chief Judge Lungstrum's decision in Novotny.  She contends that under the Worksharing Agreement between the EEOC and the KHRC, her discrimination complaint was deemed filed with the KHRC when she initially filed it with the EEOC.  (See Doc. 34 at 4-6.)  She argues that because she did not have to file a separate complaint with the KHRC she has exhausted her administrative remedies.  (See id. at 6.)

Congress granted the EEOC the power to enter into Worksharing Agreements (WSA) with State and local agencies.  See 42 U.S.C. §§ 2000e-4(g)(1)("The Commission shall have power to cooperate with and, with their consent, utilize regional, State, local, and other

---

him."  Sumler v. The Boeing Co., No. 04-3309, at 6 (10th Cir. July 28, 2005).  Boeing apparently did not file a cross-appeal of this court's ruling in which this court rejected Boeing's interpretation of Hughs which is the same as Alterra's argument.  Even after the Tenth Circuit granted Sumler's opposed motion to file a supplemental appendix under Tenth Circuit Rule 30.2(B), Sumler failed to provide adequate records or evidence for the Court to conduct de novo review on either issue presented.  See id. at 6-7. The Court affirmed the district court's grant of summary judgment in favor of Boeing.  See id. at 7.

agencies"); 2000e-8(b)(The EEOC may "cooperate with State agencies charged with the administration of State fair employment practices laws [and in] furtherance of such cooperative efforts, [ ] enter into written agreements with such State agencies and such agreements may include provisions under which the EEOC shall. . . relieve any person or class of persons in such State or locality from requirements imposed under this section."). The purpose of the WSA is "to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws." (Doc. 34 Exh. 3 ¶ I.B.) The WSA between the EEOC and the KHRC was effective during the period that plaintiff filed her discrimination charges.[2]

In <u>Love v. Pullman Co.</u> the United States Supreme Court also noted the ease and efficiency of allowing the EEOC to simultaneously initiate state proceedings. <u>See</u> 404 U.S. 522 (1972). The Court noted that "[n]othing in [Title VII] suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself. . . ." <u>Id.</u> at 525.[3] Furthermore, the Court found that to

_____

[2]The WSA was executed September 17, 2003 and extended through the fiscal year 2005. (<u>See</u> Doc. 34 Exh. 3 at 1.)

[3]Many courts followed this rationale in holding that claimants need not directly file a state charge in a Title VII action, but can rely on the EEOC to send the charge to the appropriate state agency. <u>See</u> <u>Oscar Mayar & Co. v. Evans</u>, 441 U.S. 750, 764 n.11 (1979)(noting that "the EEOC already has a regular procedure whereby discrimination complaints are automatically referred to appropriate agencies as soon as they are received"); <u>Morris</u>, 849 F.Supp. at 1427 (holding that "[a] claimant may either file the charge directly with the state agency <u>or</u> file them with the EEOC and rely on the EEOC to refer them to the proper state

require a complainant to make "a second filing after the termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process." Id. at 526-27.

Without delving into the specifics of the WSA, the court relies on the observations in Novotny and Morris that the WSA most likely provides that the EEOC and the KHRC designated each other as agents for drafting and receiving charges. See Novotny, No. 03-2566 at 7; Morris, 849 F.Supp. at 1427-28. Based on the existence of the WSA and plaintiff's claim that she timely filed the charge with the EEOC in accordance with the WSA, the court cannot conclude that it "appears beyond doubt that the plaintiff can prove no facts in support of [her] claim. . . entitl[ing] her to relief." GFF Corp., 130 F.3d at 1384. Accordingly, the court DENIES defendant's motion to dismiss count I for failure to state a claim.

### Count II:  The Family and Medical Leave Act

In her complaint, Kolarik alleges that defendant terminated her employment due to her pregnancy, thus violating the FMLA. (See Doc. 1 ¶¶ 13 & 14.)  The Family and Medical Leave Act (FMLA) entitles eligible employees to a total of 12 work-weeks of unpaid leave during any 12-month period for a number of serious health conditions, including the birth of a child.  See 29 U.S.C. §

---

agency")(emphasis added); Wilson, 673 F.2d at 1153 (concluding that "the EEOC referral of Wilson's complaint to the Kansas Commission 'commenced' the [state] action. . . and met the requirements of section 2000e-5(c).").

2612(a)(1)(A); Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724 (2003).   In order for plaintiff to qualify for leave under the FMLA she must be an "eligible employee."   See 29 U.S.C. § 2612(a)(1).   The FMLA defines "eligible employee" as an "employee who has been employed for at least 12 months by the employer and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

Kolarik states in her complaint that she began working for Alterra on or about April 12, 2003 and was terminated on or about February 18, 2004.   (See Doc. 1 ¶¶ 6 and 8.)   Her termination occurred a little over ten months after she began working for defendant, thus she does not qualify as an "eligible employee" under the FMLA.

In her response brief, Kolarik alleges that Alterra terminated her in order to prevent her from receiving employee rights under the FMLA.   (See Doc. 34 at 8.)   She argues that under section 2615 it is unlawful for an employer to interfere with or deny the exercise of any right provided under this sub-chapter.   See 29 U.S.C. § 2615(a)(1).   The court cannot accept this retaliation argument because the right to leave under the FMLA is only provided to "eligible employees," which Kolarik is not.[4]   Based on these

_____

[4]In Walker v. Elmore County Board of Education, plaintiff, a teacher, requested maternity leave before she was an "eligible employee" under the FMLA.   See 379 F.3d 1249, 1252 (11th Cir. 2004).   Plaintiff argued that a non-eligible employee has a protected FMLA claim "where the employee, before she becomes eligible for FMLA, is putting the employer on notice of her intent to take FMLA leave after she becomes eligible for FMLA coverage." Id. at 1251 (emphasis in original).   The Eleventh Circuit left the issue of whether "the FMLA protects a pre-eligibility request for post-eligibility maternity leave" for another day.   Id. at 1253.

facts, plaintiff cannot prove that she falls within the statutory definition of an "eligible employee."   See Schmitt v. Beverly Health and Rehabilitation Serv., 962 F.Supp. 1379, 1384 (D. Kan. 1997).   Plaintiff has not sought leave to amend her complaint and, in any event, the time for amendments has expired.   Accordingly, the court GRANTS defendant's motion to dismiss count II for failure to state a claim.

        IT IS SO ORDERED.

        Dated this 29th day of July 2005, at Wichita, Kansas.


                                        s/Monti Belot
                                _____
                                Monti L. Belot
                                UNITED STATES DISTRICT JUDGE

_____

Instead, the court addressed whether the FMLA protects a request for FMLA leave regardless of whether the employee is eligible for the leave.   See id.   The court held that "the statute does not protect an attempt to exercise a right that is not provided by FMLA, i.e., the right to leave before one becomes eligible therefore."   Id.